You please be seated. We'll hear argument first in number 2010-14-20 Camelback v. United States. Is it Mr. Purcell? Yes, Your Honor. Mr. Purcell, you may proceed. Good morning, Your Honors. I'm here today with Larry Ardette from Samuel Travis, her office, here to assist. I'd like to begin a little bit today by talking about the products in this case, which I feel, frankly, got a little bit lost among the canons of construction that were applied by the CIT, whose purpose really is to discern what the intent of the legislature is, and not just to be applied for their own sake. I'm not talking about the GRIs. I'm talking about canons of construction, such as whether improved articles can fall under EO nominee provisions, and so on. The CIT focused a lot on that, and I think it's important to understand what the product is, which no one's really disputing. However, the product is a separate article of converse, and I'll come back to that a little bit. I think the court below became so focused on applying GRI 1 that it didn't take into consideration that there's legislative history here that contradicts sort of that broad expansion reading of a GRI 1 provision. In 2001, Congress added a new tariff provision to heading 4202 for insulated food and beverage bags. And prior to that time, this court in articles whose purpose is to carry, store food and beverages don't belong in Chapter 4202. There's precedent on that, and the courts have interpreted that provision to exclude those sorts of articles. In this case, we have an article whose purpose, at least a good part of its purpose, and design construction is to insulate a potable beverage. So what's the takeaway from, I mean, yes, so Congress did this, and they amended it, and they put in this provision. So where does that lead you in your analysis? Well, where it leads us is that Congress recognized that before the amendment that articles that deal with food, insulated types of bags, and that would include food tote bags and anything like that that deals with food and beverages never applied to 4202 before. At the international level, the provision for insulated food and beverage bags is added. Congress put it into the U.S. TAF, and created not just an exemplar in the heading, which is important because that would just describe the types of articles that are covered under the general heading. They created a whole new merchandise category for insulated beverage bags that never existed before. And so, because prior to that time, articles such as these, and we'll put aside for a second the fact that we view this as- But where does that lead, just before you clock out, where does that lead you necessarily? I mean, let's assume those facts are undisputed, the history of how this provision got there. Where does that lead you that's inconsistent with what the Court of International Trade did? Where it leads us is that the subject articles are covered under the EO Nominee provision for insulated food and beverage bags. They are at least partially described by that provision because the history and such is that these sorts of articles appear in the subheadings under the insulated food and beverage bag. Would that be any different if this provision were always there? I mean, is there a relevance to the fact that Congress made a change as opposed to if it just had been in existence for 50 years? Yes. What is that difference? What's the difference, whether or not this had always been in there or whether or not Congress recently changed it? Because the pre-existing tariff provisions and subheadings prior to the addition were found not to cover articles whose main purpose is to insulate and carry and store food and beverages. So now with the change, the provision exists and it describes, or at least partially describes the product in question. We have a hybrid article here, a composite article. It's described partially by the travel support and similar bag provision, which backpacks falls under, because it has a cargo component that's added. This article starts out as a just like a backpack is, but it's different. And here they've increased the utility of it by adding cargo on it. They just sew on a little panel to the back so you can store some personal effects. But it's an insulated beverage bag, and if it didn't have that little flip sewn on nylon portion, it would be, nobody would, we wouldn't even be here. That little add-on portion is a very substantial part of most of these bags, except for the fact that you put, you know, several layers of clothing, all sorts of things in these bags. I agree, Your Honor, that with certain models that you can increase the cargo capacity, which adds utility to it, but it still remains a hydration system in the case, and this is why it's a hybrid. Well, maybe it's two things. I agree. And we have argued, we think the better argument is just that, Your Honor, that we have a composite article. I can't, it sounds, I can't tell whether you're shifting grounds on your argument by now saying that this is a aonomany in the food and beverage category. I didn't understand that to be the primary thrust of your brief. It is, well, it is partially described under insulated food and beverage and partially described under... I know, but partially described as opposed to fully described within an aonomany is different, right? Well, I mean, because it's a composite... I thought your main argument was you wanted to get the 3B. We do, but it's... Well, you don't need to get the 3B if you're aonomany within the food and beverage. If it's full, if it's fully covered by it, that's correct. Which one is it? Which argument are you making? I think the better argument, as we say in our briefs, is that this is a composite article because it does have a... Okay, so if it's a composite article, then I come back, I have to come back to the question of whether the Court of International Trade was correct to say that it's aonomany and what I'll call the backpack classification, right? Right. Okay, so on that point, I notice that page 17 of your reply brief, you point out that a fact that a backpack can carry a bottle of water or soda doesn't prevent it from being classified as a travel sports or similar bag. Yes. So a backpack with a thermos bottle in it would be within the aonomany of travel sports, right? Well, if you... It's true that... Let's say you take a thermos bottle, right, and you throw that in the backpack. Yes, or a sandwich or any... So a thermos bottle is an insulated bottle. So that's aonomany within travel sports and similar bag. I noticed in your exemplars, the size of the strap in front varies from one bag to the next and some bags show articles that are attached to the straps, like maybe a place to put film or something like that. There are straps to attach other types of... Yeah, attach them. So let's assume that you attach to the front end of the strap of a bag a sleeve in which to slip your thermos bottle. Would that bag be aonomany travel sports or similar bag? If it didn't... If its structure was not... No, I'm just saying you admit it if you've got, if you throw a thermos bottle in the back of the bag, it's within a travel sports and similar bag. So I'm saying all you did is you have a sleeve and you slip the thermos bottle in front, not in the bag anymore. It's on the front. It's sold that way. Wouldn't that be just within another of all forms of a travel sports bag? I think it would be covered by the travel sport bag because... Okay, so now I've got a thermos bottle on the outside, okay? And so what I do is I put in the thermos bottle a long flexible tube, a straw. So that while I'm walking, I can drink out of a straw. That's aonomany within travel sports and similar bags too? Probably because of the... If I may say... But if you have an insulated wire carrying system with a capable of delivering while you're walking, your mouth just sucking out of the straw, then why isn't your system merely an improvement over that? Because it's structure and how it's designed and developed is as a hydration system. As I said at the beginning... Yeah, all you did was put my thermos bottle in the back. But that isn't what this is. Factually, that... Well, the thermos bottle is a better insulator than yours is. Well, that I can't say... You would assume so. But that is... It would depend upon the thermos bottle, Your Honor. In this case, if I may just to pull a sample from the trial court here, which I think illustrates our point, this is a deconstructed mule sample with the cargo portion just removed to show. This article, remainder of the article, without dispute in this case, is an insulated food and beverage bag and under 4202.9204, which is... Well, that's your best... That's the closest thing to a fanny pack. That's your best example. But there is... It doesn't have any real room to carry any cargo. Right. Your Honor, I agree. And I think it's a composite article. But you're hung... All bags are going up or down together, aren't they? We believe a 3B analysis should be applied because we have an insulated food and beverage bag here, which no one disputes is the case. And cargo is added. See, this was developed originally with little or no cargo space, right? And it became... Admittedly more useful. It became a composite good. Two articles in the same... Well, that's the reason why the insulator food or beverage bag classification requires that the bag incorporate only the flexible container. Right. Well, the interior of the part that insulates only includes flexible bag. That's my point, is that's all there is to it in the original bag. Can I just move you on before your time runs out? Sure. Unless you had something else to add to... On this point, I don't, except to say that this... We have to keep in mind that... I think my time is running out here. If I... Go ahead. You can go in and talk about it. It's just important to understand that a backpack is an article of commerce, that it's not insulated. You can throw a water bottle in it and an article of food, but it's a pouch with shoulder straps that you can put anything in. This thing is developed. It's fully insulated. It's specially designed to carry the water in a certain way, and it was decided by the company that we're going to make it more useful by adding a component to make it more useful to carry personal effects. It doesn't start out as a backpack, which comes to your point... But we have a fact finding from the Corporate National Trade that your article is merely an improvement. Yes, I believe that's an indirect finding. If you're a real nominee, that's a hill you've got to climb, right? Right. I think we've overcome that. Yeah. I think Ms. Brooks has a question. Thank you. Just assuming hypothetically we were to agree with your analysis to the extent it leads us to a potential 3B category, you ask that we reverse the trial court and enter judgment for you. It seems to me that there are at least, even if we were to agree that there's a potential 3B here, there's at least two other questions, factual questions that remain to be resolved by someone. One is the argument here that these aren't really hydration bags, which you dispute, but seems to me to be highly factual and seems to be an issue that nobody's resolved yet. And the other, which I think is a little separate, is whether or not what's the essential character under 3B, the analysis once you get to 3B, about 3B. Do you agree with that, that those kinds of remand would be necessary, even if we were to agree with your argument? I don't think it would be necessary. Certainly, it could be done if this court finds that the trial court didn't have before that information. Well, the trial court never reached those issues, right? Right. Well, not directly, because Judge Ridgeway stayed on GRI 1, but she does discuss sort of the relative importance of the cargo portion and thinks, well, it was just too much cargo capacity here. So all this was before the court. We extensively briefed the essential character. Doesn't the government's motion... It happens that she makes findings of fact on that issue. She didn't specifically say, under GRI 3B, I find essential character is imparted by. She did not do that, but her discussion of the relative importance really does come through. But she left undecided the government's motion in limine. The government has a motion in limine that says, in essence, that your evidence of insulation is no good. Yes. Now, doesn't that come back? And that must necessarily come back to life if the government wants to maintain the motion on a remit. Perhaps it might, Your Honor. Because if you lose that motion, then game's over. Well, if the article's not insulated, we lose. That's what I mean. No question about it. But if I may, on that point... So, I mean, for that reason alone, we'd have to remit. Unless the court finds that there's sufficient information of insulation in the case, which we feel is just really undisputed in this case. We have a known insulator that's been discussed in other cases that's used in the HVAC industry. This is the same... Well, it's a challenge to the experts, right? I'm sorry? Your expert said, this is how I go about showing the insulating capacity, and the government's expert said, we think that's inadequate. Yeah, but the government's expert is not an expert in heat transfer. Right. This person's job is to do that. Classic factual question is the qualifications? Qualifications and just the nature of the article. The tariff, I know I'm way over my time, but... Actually, you're in your rebuttal time, but we'll reserve a little bit of rebuttal time. Thank you, Your Honor. To ask questions. On the insulation question, PE closed cell foam is not an unknown insulator. It's an established, well-known insulator that's used in the industry to insulate pipes. Our expert examined the product. You can see that the insulation surrounds the bladder or reservoir, as they call it in this case, completely, and that prevents the heat from escaping. There really isn't any issue that this thing is completely surrounded by a known insulator and insulates the bag. Nothing in the tariff requires that the temperature of the beverage has to be maintained over a certain period of time. Other parts of the tariff are very specific about, they basically call for commercial testing. We don't have that in this case. I don't think the standard is that high as to whether it maintains the temperature of beverage, and honestly, I don't think we have a factual material dispute on whether these are insulated. Okay. Very well. Thank you. Why don't we hear from the government at this point? Thank you, Mr. Purcell. We'll restore a couple of minutes of rebuttal time. Thank you. Mr. Kenner, is that right? May it please the court. This case is about the classification of backpacks. The trial court's decision classifying the backpacks under 4202 and 9230 for travel sports and similar bags should be affirmed for three reasons. First, heading 4202 and 9230, which specifically includes backpacks, covers the goods in their entirety. Second, nothing about the manner or method a backpack contains food or beverages can transform it into something else. And third, unlike the trial court's classification, plaintiff's proposed classifications under specifically... Well, let me ask you about that. I mean, is there a difference? You just said that it covers the bag in its entirety. I think the CIT judge used the term covers the item as a whole. It seems to me maybe there's a difference. It doesn't cover it entirely to the extent that if there's a separate portion of this,  that seems to me that there might be a difference between the item as a whole versus covering it in its entirety. Am I wrong about that? The AO Nominate provision for backpack would encompass backpacks which include hydration elements, encompassing all components of the Camelback hydration packs versus the insulated beverage bag component, which would only cover the allegedly insulated portion. So whether it's in its entirety or as a whole, I believe it's the same thing. Please go ahead. Do you take that view because the backpack, the canvas of the backpack surrounds the entire liquid dispensing portion as well as the cargo portion? And would you take a different view, for example, if there were two discrete elements which were, let's say, laced together as opposed to being part of a single unit so that you could take them apart or they were Velcroed together? Would that make a difference in your view as to whether this is classified as a backpack? No, Your Honor. As the trial court found, the common meaning of backpack is very broad. It's just a bag made of sturdy material finished with shoulder straps designed for carrying articles on the back, whether that article is an insulated beverage bottle. But let's assume, we can get a little silly here, I suppose, with hypotheticals, but let's assume that what you had was a backpack which would contain sport articles and that it had a big piece of Velcro on the back and then you could attach a jet pack to it and you could go jetting up with your jet pack. Would that still just be a backpack? I think at that level, when you're affixing a jet pack to a backpack, there may be an argument that is, you know, composite good because backpack, the common meaning of backpack... I think it would be a pretty good argument. The common meaning of backpack wouldn't be broad enough to cover a backpack with an attachable jet pack. So why not an attachable liquid dispenser? Well, as the appellant concedes, liquid are one of the items that backpacks are traditionally designed to carry. And whether you take that liquid and you put it into a bottle and put it into a cargo component or whether you take your bottle of water and you put it into a side pocket or you take the water and put it into an insulated bladder, backpacks are designed to carry water and the manner or method that you do that shouldn't change that classification. There's no... Under the AO nominee rules. Absolutely, under an AO nominee provision, which covers all backpacks. And there is no limitation on the term backpack. Well, unless you lose your AO nominee coverage because what you're adding is just extreme. It's beyond the reach, the language they use in the case law, right? Yes, your honor, there comes a point... I mean, a rocket that could be launched, you know, against Gaddafi's forces, packed onto your backpack, might fall out of AO nominee because it was just too far from backpack, right? Yes, your honor. However, in this case, entering a beverage in a bladder is not something that's so outlandish or outrageous to put into a backpack that would take it out of the AO nominee provision for covering all backpacks. This is a particular type of water delivery system that's in the backpack. And it's got a bite valve on it, right? And it's designed to be able to allow you to drink while you're exercising and walking. Why isn't that sufficiently different from a water bottle, for example, that you lose the AO nominee coverage on the ground that the article in question is just so far removed? It's not merely an improvement. All backpacks, as appellant concedes, are designed to carry water. And the purpose of carrying the water is to be able to dispense it to yourself. Well, if you're carrying water in a refrigerator, it's actually a refrigeration unit that's put in the backpack. I'm sorry, that's going to be unusual and different, isn't it? That may take it out of the AO nominee heading for backpacks if you had an electronic refrigeration unit. But here you have a backpack designed to carry water like other backpacks. Well, it's not just designed to carry water. I mean, you're only giving them half of their cases. It's designed to carry and deliver the water. The more unique piece of it, I think probably the patents govern the bite valve and the other aspects, not just the little thing the water sits in, right, the bag. Yes, Your Honor. However, all backpacks are designed to dispense water, whether it's manually by taking my bag off and taking my bottle out or a little more advanced where they have the side pockets with a bottle of water. Doesn't that then go to the, are you merely an improvement or is it a quantum leap? If what they've done is a quantum leap over previous ways of carrying water around in backpacks, then they would breach the AO nominee wall, correct? There does come a time when you have breached that wall, but in the instant case, we have not reached that point. Let me see if I can understand where that wall is. Suppose that you have this exact case, but I mean, you have something that's on the back and it has a canvas outer shell and inside the canvas shell is the insulated bag for compartment for carrying goods. Is that, in your view, still a backpack? Just so I understand. It's this device without the cargo portion, without the cargo carrying segment. Like the original CamelBaks with simply the insulated bladder? That would fall under the AO nominee backpack. However, then it would be completely described by backpack and completely described by the But again, here you have between 300 and I believe 1,700 cubic inches of uninsulated cargo space, which prevents, even if it does insulate, from being completely described by either the O4 or O8 program. So you'd say it's still a backpack, but they managed to prevail because it also falls within a second and more specific AO. Okay, I understand your position. One of the difficulties I'm having is this seems to me to be a highly factual issue, but I'm having a hard time figuring out what the facts are. I mean, it seems to me your argument is just based on we know this. I know it when I see it. There were certain facts introduced on the other side, like where you keep these in the stores and where they're advertised in certain magazines. Beyond that, what facts do we look at then to make the determination other than what you're telling us and what your instinct is? Well, as a court determined, you first look to the common meaning of the terms. And the common meaning of backpack, again, is very broad, and it's a bag made of sturdy material, finished with back straps, designed to carry articles on the back. And that's precisely what you have here. You have a durable bag with adjustable shoulder straps designed to carry not only food and beverage on your back, in certain instances skis, snowboards. So if this is another category in your E-Nominate provision is a shopping bag. So if this whole system and just the system they've got with the insulation is somehow manufactured with the outer casing being a shopping bag, you'd be here making the same argument, right? Well, in that case, it would fall under the E-Nominate shopping bag and completely under the insulated beverage bag. And again, then you'd go to a 3A analysis. So if there's a shopping bag and you have another compartment to keep your change purse in, or there's enough room to put groceries in at the same time that you have this provision, then you'd have the same variation you have here, right? You'd say, no, this is a shopping bag. It may be that, yeah, if you simply put a pocket to put your change into a shopping bag, that would fall under the E-Nominate provision, which would cover all shopping bags. And again, here you have a durable bag with shoulder straps designed to carry gear, food, water, beverages, all within the additional US Note 1, which specifically tell us that tribal sports have similar bags, and are bags designed to store, carry, and transport article, personal effects, clothing, things of that nature. Let me ask you what I asked your colleague about what if we were to disagree with you on the 3B issue, whether you agree or disagree that this case is ready for disposition here, or whether it needs to be sent back, and if so, why? No, Your Honor. I believe if the court were to feel a 3B analysis were appropriate, it would need to be remanded. There's a question of fact, first, as to whether or not the bags even insulate. Second, there's a question of fact as to what the essential character would be. If you look at CamelBak's own, its own advertisement of these bags, it touts all the cargo carrying capabilities. For example... How do you decide what the essential characteristics are? What perspective? Do you look at the perspective of a consumer at the outdoor shop looking at these things? Do you simply look at the bags themselves? I believe all these things would go into the analysis. The way they're marketed would be pertinent, I take it? Yes, Your Honor. They would be. And if you look at how Plaintiff itself talks about its bags, for example, the snowbound is advertised to carry your skis and snowboard, shovel, probes, clothes, tools, snacks, water. Clearly, the cargo carrying capabilities are very, very important to these bags. This raises... I'm sorry, were you not covered? This raises another question which Judge Clevenger alluded to it, I think, in your opposing counsel's argument of whether all of these bags rise and fall together. I take it that the way this was litigated, that there was no suggestion that some of the bags should be disposed of one way and some another. Is that correct? That is correct. The bags all have... There's quite a variation from what I can see between the bags that carry a significant amount of water and have a small amount of cargo space and the bags that carry perhaps a somewhat larger amount of water but a much larger cargo space. In all cases, the uninsulated cargo portion is larger than the quote-unquote beverage portion. They all contain between 300 and almost 1,700 cubic inches of uninsulated space versus between, I believe it's 122 and 183 of the alleged insulated space. So, in all these cases, you have a significant amount of cargo carrying capabilities and they all should be classified similarly. It seems to me there's a similarity between the analysis we go through in terms of determining whether or not 3B applies at all and then the ultimate answer in 3B. Because the analysis as to whether 3B applies is whether or not this modification or addition changes the essential character. So, if we've already determined that the essential character has been changed, doesn't that get you at least halfway to determining what the essential character is? I'm sorry. Well, what in your view is the analysis we do under 3B? We determine what is the... The essential character. First, you'd have to determine whether there are multiple components and no provision covers the goods in their entirety. And after you've come up with that determination, you would have to look at... I think what Judge Cross was referring to was that if you were looking under GRM 1, deciding whether or not this was AO nominee backpack, and you concluded that the Court of Federal... The Court of National Trade clearly erred by saying this was merely an improvement. Just follow me. So, you reach the conclusion to know this is a quantum leap. This... The water carrying and delivery system in the Camelbacks is so unusual and apart from the thermos bottle that we're going to break the wall. Having broken the wall, I think Judge Cross was saying, well, doesn't that tell you something if you had to go to the 3B analysis? That the thumb is on the scale in 3B analysis in terms of saying it's the water delivery capacity that is more significant than the cargo bag. I do not believe so. I believe at that point you would just have made the determination that travel sports and similar bags could only cover half of it, and the other half would be covered by insulated beverage bags. And then you would have to look at the two competing provisions and determine what the essential character would be. But again, at that point, you'd have to make a factual determination of, first and foremost, do these things insulate? And again, there's an outstanding question of fact as to whether Camelback's test was statistically appropriate to make that finding. Unless there's any further questions, I... Well, what is your... As I understood, Camelback's position was that they were realized that they had to get away from the AON nominee classification of the backpack because they're dead ducks, if that's correct. And they had two arguments for getting around it. One was, as a factual matter, we are not merely an improvement. We're substantially different. And the other argument was a legal argument, which was case law and the act of Congress stops you from being able to put their bags into the category of a backpack at all. And what is your response to that argument? Yes, Your Honor. Estrada and Outer Circle were an Azusa and Daenerys analysis of Heading 4202, previous to the 2001 amendments. And what those cases specifically did, they looked at all the enumerated items and determined that none of the enumerated items were designed for food and beverage. Therefore, the scope of these items could not encompass items for food and beverage. That would no longer be the case after 2001. And if this court were to undertake the same analysis today, the unifying characteristics of all of the goods, including insulated food and beverage bags, would be items to transport, store, and protect items which now include food and beverage. So there is no... which was, hey, you really ought to be a nominee with an insulated food or beverage bag. No, Your Honor. It means that backpacks and the aonomity backpacks can be backpacks for food and for beverage, which makes it a broader definition. Thank you. Thank you. Mr. Purcell, two minutes. Just to follow up on what Mr. Kenner was just talking about on the legislative history. When the insulated food and beverage bag provision was added, prior to that time, no article that involved food and beverage applied to any of the subheadings in 4202. So really what the government is arguing here is that Congress somehow expanded all the other subheadings under that provision when they added that, which is contrary to this court's precedence. Before that legislation was passed, adding insulated food or beverage bags, there was no way in which the government would charge a duty on an imported food or beverage bag? There were nowhere covered? Nothing that involved... no insulated article that involved food or beverage was covered by the pre-2001 provisions in 4202. That's what SGI and Outer Circle talk about. So they added a provision, but not just an exemplar. They added a whole new separate category to cover these sorts of articles. The only issue in this case... But it's for a limited... it's for beverage bags as interior incorporates only a flexible plastic container. Nothing else. That special provision was lobbied by Camelback to get their articles, these hydration systems, into that provision, which this trial court just really sort of ignored. To get a particular hydration system that existed as of that time. Which begs the question here is that at least part of this article we submit, the great part, is an insulated beverage bag that's described by that. And so we acknowledge that there is some additional utility because of the cargo component, which takes personal effects into it. And that's why we have a 3B analysis here. To put a GRI 1 into a backpack provision that never applied to food and beverages, to get to that point, you would have to say that the addition in 2001 expanded those provisions to somehow carry things... Right, but you admit that the GR, that the backpack provision, aonomeni, includes a backpack with a thermos bottle. It always has. A thermos bottle, but that's not what we have here factually. We're not throwing a thermos bottle into a backpack here. This is an entire integrated system and a separate article of commerce. Which leads me to just the last point that I want to make. When you consider aonomeni provisions covering all forms of the article, the CIT never really did the analysis on the other side. Why isn't this an expanded or improved form of an insulated beverage bag? That analysis was not done. This starts out as a hydration system under 4202, 9204, and they add cargo. Why that isn't an improved insulated beverage bag? The argument that you want to use to keep out of the backpack aonomeni would be used against you when you want to be aonomeni within the insulated beverage bag, because you had all this cargo space that's too extreme and you're too far beyond. At least the analysis would be even on both sides. But sauce for the goose is sauce for the gander, isn't that what it is? At least the argument is consistent, Your Honor. And I think ultimately we have a composite article and the proper analysis is to weigh those in a 3B analysis. Thank you, Your Honor. Thank you. The case is submitted.